Donald TERRY, Petitioner,

v.

Frank D. GILLIS, et al., Respondents.

No. CIV. A. 98–6719.

United States District Court,
E.D. Pennsylvania.

April 13, 2000.

Donald Terry, Coal Township, PA, pro se.

Peter J. Gardner, District Attorney's Office, Philadelphia, PA, for respondents.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Petitioner Donald Terry, a state prisoner, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently before the court is the Report and Recommendation of the Magistrate Judge recommending that the petition be denied and dismissed. In arriving at that recommendation, the Magistrate Judge found that three of petitioner's claims were without substantive merit and that a fourth claim was not cognizable in a federal habeas petition.

Petitioner has filed objections to this Report and Recommendation. After *de novo* consideration of petitioner's objections, respondents' response to those objections and petitioner's rebuttal to that response, the court will overrule petitioner's objections, adopt the Report and Recommendation as supplemented by this memorandum, and deny and dismiss the petition.[1]

## I. BACKGROUND

On July 28, 1972, a jury convicted petitioner of three counts of first degree murder, one count of arson, and one count of possession of explosives. Following the verdict, Judge Leo Weinrott sentenced pe-titioner to three concurrent terms of life imprisonment for the murders and lesser concurrent terms of imprisonment for the other offenses. In denying petitioner's post-trial motions, the trial court described the evidence as follows:

The facts indicated that defendant was having domestic problems with his wife, Shirley Terry. As a result, she was visiting with her mother, Lucille Harris, one of the decedents herein involved, on January 11, 1971, at 2927 North Fairhill Street, Philadelphia.

Early in the evening at Mrs. Harris' house, defendant visited his wife and threatened her. The police were called and the defendant was removed, but not until he threatened he would be back. Later that evening, defendant called Frank Mitchell and Gwendolyn Harris, both of whom also lived at Lucille Harris' house. Frank Mitchell had five children also living with him there. Two of them were the other victims of the murder. Defendant spoke to Frank Mitchell and Gwendolyn and told them to get themselves and the other people out of the house because he was coming back and burn[ing] it down. Subsequently, the defendant purchased the materials for a "molotov cocktail," and together with his brothers, Benjamin and Willie, went to the Harris house and executed the threat to burn it down.

Trial Ct.Op. 3/22/73 at 1–2.

Based on the state practice at the time, petitioner appealed his conviction and sentence directly to the Pennsylvania Supreme Court. On appeal, petitioner advanced the following contentions: (1) that the trial court erred by improperly charging or failing to charge the jury regarding voluntary manslaughter; (2) that the trial court erred by creating and sanctioning an atmosphere of undue prejudice to petition-

---

**1.** After receiving the Magistrate Judge's Report and Recommendation, this court is required to make a "de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b).

er by allowing photographs to be displayed in the courtroom; (3) that the trial court erred by overruling every defense objection but one; (4) that the trial court erred by improperly highlighting and commenting on the evidence to the jury; and (5) that the prosecutor committed misconduct by making improper comments throughout the trial. The Pennsylvania Supreme Court affirmed petitioner's conviction and sentence on June 1, 1977. *See Commonwealth v. Terry,* 473 Pa. 11, 373 A.2d 453 (1977) (per curiam).

Petitioner then filed the first of two state post-conviction collateral relief petitions on December 19, 1979.[2] This first petition, filed pro se, was subsequently amended after counsel was appointed. In his amended petition, petitioner made the following claims: (1) that trial counsel was ineffective for not requesting a jury charge on the issue of petitioner's alleged renunciation or abandonment of the conspiracy to firebomb his in-laws home; and (2) that trial counsel was ineffective for not objecting to improper comments made by the prosecutor in his closing argument. After an evidentiary hearing, the PCHA court denied petitioner's petition. Petitioner appealed that denial, seeking review only on the issue of whether trial counsel was ineffective for failing to object to the prosecutor's closing argument. The Pennsylvania Superior Court affirmed the lower court's ruling. Petitioner then appealed to the Pennsylvania Supreme Court, again claiming that trial counsel was ineffective for failing to object to allegedly improper statements made by the prosecutor during trial. The Pennsylvania Supreme Court denied allocatur on October 30, 1986.

On December 3, 1996, this time pursuant to the PCRA, petitioner, acting pro se, filed a second petition seeking post-conviction collateral relief. In a seven-page "Rider" attached to the petition, petitioner again raised, and slightly expanded upon, his contention that trial counsel was ineffective for failing to investigate, raise, and pursue a withdrawal defense and for failing to seek a charge regarding withdrawal. Petitioner also contended that trial counsel was ineffective for failing to preserve such claims on direct appeal. Petitioner further appeared to make the following additional claims: (1) that although he was not charged with conspiracy or complicity[3] as defined in the Pennsylvania statutes, the trial judge charged the jury on those crimes in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (2) that his trial counsel was ineffective for failing to object to that charge; and (3) that counsel during his first post-conviction proceeding was ineffective for failing to raise trial counsel's ineffectiveness.

On June 23, 1997, the PCRA court dismissed petitioner's PCRA petition finding that it was time-barred under the PCRA[4] and that, as a successive petition, petitioner had failed to establish a prima facie case that a miscarriage of justice had occurred,

---

**2.** Petitioner's first post-conviction petition was filed under Pennsylvania's now-superseded Post Conviction Hearing Act ("PCHA"). The PCHA was modified in part, repealed in part, and renamed the Post Conviction Relief Act ("PCRA"), 42 Pa.Cons.Stat.Ann. § 9541 *et seq.,* effective April 13, 1988. Petitioner subsequently filed his second petition pursuant to the current law in effect, the PCRA.

**3.** In connection with this claim, petitioner uses the following terms interchangeably: conspiracy, complicity, accomplice liability, or accomplice. *See* PCRA Petition, Rider at 3(E) and 3(F).

**4.** The PCRA, as amended, provided in pertinent part that "[a]ny petition ..., including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final ...." and that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review". *See* 42 Pa.Cons.Stat.Ann. § 9545(b)(1) and (3).

as required pursuant to *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988).[5] The PCRA court later issued a supplemental opinion adopting respondents' argument that the claim of counsel's ineffectiveness for failing to pursue a withdrawal theory was previously litigated and that the claims lacked substantive merit.

On appeal to the Pennsylvania Superior Court, petitioner challenged the PCRA court's determination that his petition was untimely and that he had failed to meet the *Lawson* standard. Petitioner also claimed that the PCRA court should have reviewed his claim on the merits, with respect to trial counsel's failure to argue the withdrawal defense at trial, pursuant to the "doctrine of extraordinary merits." In affirming the PCRA court's ruling, the Pennsylvania Superior Court found that the petition was time-barred but noted that petitioner claimed that he fit under one of the exceptions set forth in the statute.[6] Without addressing the validity of that asserted exception, the Pennsylvania Superior Court assumed arguendo that the petition was timely and rejected, on the merits, petitioner's withdrawal claim. Petitioner then sought allocatur on the grounds that his claim was not time-barred as determined by the lower courts and that in rejecting his ineffectiveness/withdrawal claim, the Pennsylvania Superior Court "erroneously interpreted Pennsylvania Supreme Court precedent." Allocatur was denied, and as a result, petitioner filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254.

## II. LEGAL STANDARD

Section 2254 provides relief to prisoners incarcerated by the state only if such "custody is in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to the appropriate standard of review for federal courts, the pertinent provisions of § 2254 provide:

An application for a writ of habeas on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding...."

28 U.S.C. § 2254(d). Moreover, "a determination of a factual issue made by the State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

▮▮▮▮ The Third Circuit has articulated a two-part analysis in reviewing federal habeas claims. The court must first determine if the state court decision was "contrary to" Supreme Court precedent

---

**5.** In *Lawson,* the Pennsylvania Supreme Court held "that a second or any subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." 549 A.2d at 112. To make such a showing, petitioner must "demonstrate that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Commonwealth*

*v. Morales,* 549 Pa. 400, 701 A.2d 516, 520–21 (1997).

**6.** The 1995 amendments to the PCRA recognized three exceptions to the one-year statute of limitations. In support of his PCRA petition, petitioner claimed that he met the following exception: "[T]he facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.Cons.Stat.Ann. § 9545(b)(ii).

governing the ground for relief, such that a contrary outcome is required. *See Matteo v. Superintendent S.C.I. Albion*, 171 F.3d 877, 890 (3d Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 73, 145 L.Ed.2d 62 (1999). Barring that demonstration, a habeas writ should not be granted "unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified under existing Supreme Court precedent." *Id.* Indeed, even if the federal habeas court disagrees with the state court decision, habeas relief is not appropriate. *Id.* Finally, although a reviewing court may consider "the decisions of the inferior federal courts" when deciding whether the state court reasonably applied Supreme Court precedent, "federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the United States Supreme Court has not addressed." *Id.* at 891.

## III. DISCUSSION

In his instant federal habeas corpus petition, filed on December 28, 1998, petitioner asserts the following four generalized grounds for relief:

(1) That his "[c]onviction was obtained in violation of Petitioner's United States Constitution 5th Amendment Right to Due Process of Law;"

(2) That his "[c]onviction was obtained in violation of Petitioner's United States Constitution 6th Amendment Right to Fair and Impartial Trial;"

(3) That his "[c]onviction was obtained in violation of petitioner's United States Constitution 6th Amendment Right to Effective Assistance of Counsel;" and

(4) "Petitioner was denied full and fair hearing on motion for post conviction collateral relief".

*See* Petition at 7–8. Under each of these claims, petitioner refers the court to "Exhibit A" of his petition, which appears to be identical to the second petition he filed in the Pennsylvania state court pursuant to the PCRA, including the "Rider" with all its claims detailed above. *See supra* at 606.

Respondents argue that petitioner's instant petition is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[7] Respondents also contend that plaintiff's instant claims, even if timely, are either unexhausted or lack merit.

Upon review of the record, Magistrate Judge Thomas J. Rueter found that petitioner's claims of ineffectiveness of counsel associated with the alleged failure of his counsel to investigate, raise, and pursue a valid withdrawal defense lacked substantive merit. *See* Report & Recommendation at 5–8. In addition, the Magistrate

---

**7.** Like the PCRA, the AEDPA, when it was enacted, provided for a one-year statute of limitations from the time of final judgment for the filing of federal habeas petitions. *See* 28 U.S.C. § 2244(d)(1). For state prisoners whose judgment became final prior to the enactment of the AEDPA, the Third Circuit allowed those prisoners to file a federal petition up until April 24, 1997. *See Burns v. Morton*, 134 F.3d 109, 111–12 (3d Cir.1998). Petitioner's instant petition was filed on December 28, 1998, well past the grace period. However, the time in which a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." *See* 28 U.S.C. § 2244(d)(2). Respondents argue that the PCRA court expressly found that petitioner's claim was untimely and that it does not matter that the Pennsylvania Superior Court addressed his claims on the merits without deciding whether petitioner satisfied the asserted "new facts" exception. Respondents further argue that petitioner could not have met the exception because he raised his withdrawal arguments in 1979 in his amended PCHA petition. Thus, respondents contend that petitioner's state PCRA petition was not a "properly filed application" for state collateral relief and the AEDPA's one-year statute of limitations period should not be tolled. Given the court's ultimate resolution of this matter, there is no need to address respondents' timeliness argument.

Judge concluded that petitioner's claim that he was denied a full and fair hearing on his PCRA petition is not cognizable in a federal habeas petition.[8] *Id.* at 8–9.

Petitioner has filed various objections to the Report & Recommendation. Petitioner asserts that the Magistrate Judge failed to address several of the claims set forth in his instant petition. Specifically, petitioner claims that the Magistrate Judge erred in not considering his claim that the trial court improperly charged the jury on conspiracy and accomplice liability/complicity and his claim that trial counsel failed to object to such charge. *See* Petitioner's Objections at 3–4. Petitioner further contends that the Magistrate Judge overlooked his claim that trial counsel was ineffective for failing to request a jury charge on the defense of withdrawal. *Id.* at 5. Petitioner also claims that the Magistrate Judge, in concluding that he had not withdrawn from the conspiracy, improperly relied upon a case decided ten years after petitioner's conviction and that the controlling case at the time of his conviction mandated a finding that he did withdraw from the conspiracy. *Id.* at 5–6. Finally, petitioner maintains that the Magistrate Judge misapplied the United States Supreme Court's opinion in *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), when he deemed petitioner's claim that he was denied a full and fair hearing on his PCRA motion to be unreviewable in a federal habeas proceeding. *Id.* at 7–8.

## IV. ANALYSIS

### A. *Petitioner's "Unreviewed Claims"*

From the court's review of the record, it appears that petitioner is correct in his assertion that the Magistrate Judge did not consider two of his habeas claims: (1) that the trial court improperly charged the jury on conspiracy and accomplice liability/complicity; and (2) that his counsel failed to object to such charge.[9] Respondents contest petitioner's objections stating that the failure of the Magistrate Judge to address his conspiracy/complicity claims is of no moment because these claims were not exhausted. In rebuttal, petitioner argues that these claims are "substantially equivalent" to those presented in his " 'pleadings and briefs' in [the] Pennsylvania trial, appellate and supreme courts." *See* Petitioner's Rebuttal to Respondents' Response to Petitioner's Objections [hereinafter Petitioner's Rebuttal] (doc. # 14) at 1–2. According to petitioner, because the state courts ruled that his claims were time-barred but nonetheless chose to address the merits of some of his claims, his claims should not be considered "defaulted." *See* Petitioner's Rebuttal at 2. The court agrees with respondents. Petitioner, despite his claims to the contrary, has failed to exhaust these two claims.

Generally, a federal court may not grant habeas relief unless the petitioner has exhausted his remedies in state court. *See Holman v. Gillis,* 58 F.Supp.2d 587, 591 (E.D.Pa.1999) (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999)). Exhaustion requires that a petitioner provide each level of state court a fair opportunity to act on his claims. *See Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) (finding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's es-

---

**8.** The Magistrate Judge determined that it was unnecessary to address respondent's statute of limitations argument and the question of whether the Pennsylvania Superior Court's decision to address the merits of the untimely PCRA petition may have tolled the statute because the Magistrate Judge concluded that petitioner's present federal habeas petition lacked merit.

**9.** That the court "sustains" this objection, however, represents only a pyrrhic victory for petitioner given the court's determination as to the efficacy of these claims.

tablished appellate review procedures"). Only if the legal theory and supporting facts for each claim asserted in the federal habeas action are "substantially equivalent" to those presented to the state courts will the petitioner be deemed to have fairly presented such claims. *See Doctor*, 96 F.3d at 678 (citing *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.1989)).

Here, plaintiff did not raise his claims regarding the court's charge on complicity and his counsel's failure to object to that charge in either his direct appeal or in his first post-conviction petition pursuant to the PCHA. Although petitioner did assert these particular claims in his second post-conviction petition pursuant to the PCRA (because it is identical to the instant federal habeas petition), he failed to raise them in his appeals to the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *See Lines v. Larkins*, 208 F.3d 153, 159–60 (3d Cir.2000) ("All claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to *each level* of the state courts.") (emphasis added). Contrary to petitioner's bald assertion, the court finds that petitioner did not raise substantially equivalent claims or supporting facts or legal theories to the Pennsylvania Superior Court or to the Pennsylvania Supreme Court during his second round of post-conviction proceedings. Rather, petitioner focused only on the facts and legal theories supporting those claims relating to his alleged withdrawal defense.

To the extent that petitioner may now be asserting that the PCRA court's ruling that his claims were time-barred somehow "prevented" him from raising these claims to every state court level, the court disagrees. Indeed, "[t]he state courts need not discuss or base their decisions upon the presented claims for those claims to be considered exhausted." *Doctor*, 96 F.3d at 678 (citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Here, petitioner was not "prevented" from asserting his claims relating the allegedly improper conspiracy and complicity charge to the Pennsylvania Superior Court and the Pennsylvania Supreme Court.[10] In fact, the Pennsylvania Superior Court addressed petitioner's withdrawal claims on the merits, despite the lower court's finding that all of petitioner's claims were untimely.

Thus, petitioner would be unable to exhaust his available state remedies relating to these particular claims at this point because these claims would be either waived[11] or deemed time-barred.[12] Where a state prisoner has not presented all or a portion of the claims contained in his federal habeas corpus petition to every level of the state courts for review, but state procedural rules would eliminate further avenues of relief, the "technical requirements for exhaustion" are met be-

---

**10.** At the time petitioner sought PCRA review, the Pennsylvania Supreme Court had not consistently and regularly applied the 1995 amendments to the PCRA, namely, the one-year statute of limitations, as a procedural bar to all untimely PCRA petitions that do not qualify for any of the three exceptions. *See Banks v. Horn*, 126 F.3d 206, 214 (3d Cir. 1997). Further, no court had yet decided petitioner's claim that he fell within one of the articulated exceptions.

However, the Pennsylvania Supreme Court now "consistently and regularly" applies the 1995 amendments to the PCRA on the basis that the amendments are jurisdictional. *See Holman*, 58 F.Supp.2d at 596 (citing *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d

638 (1998), and its progeny). Thus, petitioner's PCRA claims, if brought today, would likely be denied by the Pennsylvania courts without consideration of the merits.

**11.** The PCRA provides, "To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following ... (3) that the allegation of error has not been previously litigated or waived." 42 Pa.Cons.Stat.Ann. § 9543(a)(3). A claim is waived "if the petitioner could have raised it but failed to so ... in a prior state postconviction proceeding." 42 Pa.Cons.Stat.Ann. § 9544(b).

**12.** See notes 4 and 10, *supra*.

cause there are no longer any state remedies 'available' to the petitioner. *Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (*citing* 28 U.S.C. § 2254(c)); *see also Holman,* 58 F.Supp.2d at 596. The basis for such a rule is clear: "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.... In the absence of the [procedural default doctrine] in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Coleman,* 501 U.S. at 732, 111 S.Ct. 2546. Accordingly, claims deemed procedurally defaulted are prohibited from federal review on the merits unless petitioner can show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. *See id.* at 749–50, 111 S.Ct. 2546; *see, e.g., Lines,* at 160–61 (stating that although it would now be futile for petitioner to return to state court and attempt to exhaust his claims, federal court may not address his claims on the merits unless petitioner could demonstrate cause and prejudice for the default or show that a fundamental miscarriage of justice would result). Thus, because plaintiff failed to present both his claim regarding the jury charge and his claim that counsel was ineffective for not objecting to that charge to the Pennsylvania Superior Court and the Pennsylvania Supreme Court, his claims are procedurally defaulted and may only be considered on the merits if petitioner makes a showing of cause and prejudice or that a fundamental miscarriage of justice would result were review not undertaken.

 To demonstrate cause sufficient to excuse a procedural default and reach the merits of a claim, petitioner must show that "an objective factor external to the defense" hindered or prohibited him from complying with the applicable state procedural rules. *Caswell v. Ryan,* 953 F.2d 853, 857 (3d Cir.1992). Petitioner can establish actual prejudice by pointing to an error that caused him to suffer an "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Finally, a "fundamental miscarriage of justice" occurs where the petitioner presents a colorable claim of actual innocence of the crime for which he was convicted or the sentence imposed. *Schlup v. Delo,* 513 U.S. 298, 314–15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner will only demonstrate a colorable claim of actual innocence "by establishing that, in light of all the evidence, including that claimed to have been illegally admitted and that claimed to have been wrongfully excluded or that which became available only after trial, the trier of fact would have entertained a reasonable doubt of his guilt." *See Wheeler v. Chesny,* No. CIV.A. 98–5131, 2000 WL 124560, at *2 (E.D.Pa. Jan.27, 2000) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339 n. 5, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). This exception is "exceedingly narrow." *See Tran v. Gillis,* CIV.A. No. 98–532, 1999 WL 962539, at *7 (E.D.Pa. Oct.21, 1999).

 Other than contending that the Magistrate Judge failed to address these claims, petitioner has not addressed the "cause and prejudice" requirement. Petitioner does not argue, or even imply, that some form of external governmental interference impeded his ability to present all his claims throughout the second PCRA proceeding. Nor can petitioner claim cause for failing to exhaust his state-law remedies by pointing to the PCRA court's ruling that his second PCRA petitioner was untimely. Indeed, as discussed above, petitioner consistently presented his withdrawal arguments to each available level but failed to assert his claims regarding the court's alleged charge on conspiracy and complicity and his counsel's failure to object to that charge. Therefore, petitioner has not implicated an "objective exter-

nal factor" that impeded his efforts to comply with Pennsylvania's procedural rules. *See, e.g., Caswell,* 953 F.2d at 862 (finding it "unpersuasive for [the petitioner] to argue ... that he had shown cause and prejudice on the basis of his belief 'that because time had expired to file a timely petition for review in the Pennsylvania Supreme Court, he could not ever file such a petition' ").

▮▮▮▮▮▮ In addition, although petitioner claims that "it is clear from the evidence, statements and witnesses that [he] did not himself commit the arson" and that "[w]ithout the charge of conspiracy and accomplice liability, there was no connection by law linking petitioner to the arson murders," *see* Petition at Ex. A, 3(F) at ¶¶ 10 and 10(a), the court finds that petitioner has not established, in light of facts presented during the trial, including an incriminating confession made by petitioner himself that was read into evidence, that the trier of fact would have entertained a reasonable doubt of his guilt.[13] Thus, these claims are inexcusably defaulted.

### B. *Petitioner's Reviewed Claims*

#### 1. *Ineffectiveness of Counsel*

Petitioner claims that his trial counsel was ineffective for failing to raise, prepare, investigate, and seek a charge on the defense of withdrawal. The Magistrate Judge concluded that this claim lacked merit finding that "under Pennsylvania law, petitioner did not withdraw from the conspiracy." [14] *See* Report & Recommendation at 8 (citing *Commonwealth v. Car-*

*litz,* 319 Pa.Super. 580, 466 A.2d 696, 698 (1983)).

Claims of ineffective assistance of counsel are to be evaluated under the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 688–695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Second, petitioner must show prejudice in that, absent counsel's ineffectiveness, "there is a reasonable probability that ... the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

In his objections to the Magistrate Judge's Report and Recommendation, petitioner argues that it was improper for the Magistrate Judge to rely on *Carlitz* as that case was decided more than ten years after petitioner's conviction. Petitioner then contends that the record demonstrates that he withdrew from the offense prior to its commission. *See* Petitioner's Objections at 6.

The Pennsylvania Superior Court addressed petitioner's instant claim of ineffectiveness in petitioner's PCRA petition. The court found that petitioner's own confession, taken the day after the crimes occurred, established that only after petitioner and his brothers had decided to throw the Molotov cocktails into the victims' house, only after petitioner obtained a container for the gasoline and rags and purchased the gasoline, only after they arrived a half a block from the victims' house, only after petitioner and his brothers built the Molotov cocktails, and only after petitioner's brother Benjamin had lit

---

**13.** Jury instructions in state trials are typically matters of state law, but are subject to federal habeas review where they violate specific constitutional standards imposed on the states by the due process clause of the Fourteenth Amendment. *Hallowell v. Keve,* 555 F.2d 103, 106 (3d Cir.1977). Upon review of the entire charge at trial in this case, the court finds that the court was not charging the jury to find petitioner guilty of conspiracy

but was rather instructing the jury on the law of aiding and abetting. *See* N.T. 7/28/72 at 446–84.

**14.** Petitioner's objection that the Magistrate Judge did not specifically refer to trial counsel's alleged failure to seek a charge on a defense withdrawal is overruled given that the claim upon which it is based, failure to pursue a withdrawal defense, is without merit. *See infra,* at 612–13.

the device and was actually in front of the house, did petitioner tell his brother to stop. *See Commonwealth v. Terry*, No. 2850, Philadelphia 1997 slip op. at 5 (Pa.Super.Ct. July 23, 1998) (referring to N.T. at 126). The Pennsylvania Superior Court held that for withdrawal to be effective, it must occur before the commission of the crime is so imminent that it cannot be avoided. *Id.* (citing *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976)). The court then concluded that petitioner's alleged withdrawal occurred during the commission of the crime and therefore counsel was not ineffective for failing to raise the defense.

 This court finds that the Pennsylvania Superior Court's adjudication of petitioner's instant claims was neither contrary to nor involved an unreasonable application of United States Supreme Court precedent. Indeed, petitioner has not directed this court to any United States Supreme Court precedent, nor has this court uncovered any contrary United States Supreme Court precedent, concluding that counsel would be deemed ineffective for pursuing a withdrawal defense in light of petitioner's own incriminating confession in this case. Likewise, the court also concludes that the Pennsylvania Superior Court's determination was not based on an unreasonable application of the facts in this case.[15]

Moreover, during its charge, the trial court instructed the jury that:

The guilt of one engaging in an unlawful enterprise consists in part in the encouragement and support that he gives to those who commit the crime; and the influence and effect of such encouragement continue until he withdraws the encouragement by acts or words showing that he disapproves or opposes the contemplated crime. He cannot escape responsibility merely by the expedience of running away. That determination must be made of course, by you.

N.T. 7/28/72 at 474–75. Having heard that charge and considering all the evidence, the jury obviously made its determination against petitioner. Accordingly, because counsel was neither ineffective for failing to raise, investigate, pursue, or seek a charge on the withdrawal defense nor was petitioner prejudiced, the court will overrule petitioner's objection.[16]

2. *Denial of "Full and Fair" Hearing on PCRA Motion*

In his petition for habeas relief, petitioner rather cryptically states: "Although PCRA motion met requirements under Pennsylvania law it was summarily dismissed an [sic] untimely. On appeal the Superior Court addressed de novo merit of PCRA without making assessment on all issues advanced therein and affirmed lower court's action. The Supreme Court denied Petition for Allowance of Appeal." *See* Petition at 8. Petitioner also refers the reader to Exhibit A, his previously filed PCRA petition. Exhibit A and its attached "Rider" then detail various reasons

---

15. Petitioner argues that the Magistrate Judge should have relied on *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971), rather than *Commonwealth v. Carlitz*, 319 Pa.Super. 580, 466 A.2d 696 (1983). In *Sampson*, the Pennsylvania Supreme Court stated: "[T]his Court has held that although there is a conspiracy to commit robbery, one of the conspirators will have a valid defense to a murder charge if the accomplice voluntarily abandons the scheme *appreciably* before the homicide occurs, giving his fellow conspirators *sufficient time* to follow his example." 285 A.2d at 483 (emphasis added) (citing *Commonwealth v. Doris*, 287 Pa. 547, 135

A. 313 (1926)). Even under *Sampson*, therefore, the state court's factual determination that assuming petitioner had attempted to withdraw from the firebombing of his in-laws' home, he did so during the commission of the crime, and thus withdrawal was not a valid defense.

16. Moreover, as the Magistrate Judge notes, trial counsel did in fact imply in his closing that petitioner withdrew from the crime prior to the actual firebombing of the house. *See* Report & Recommendation at 8; *see also* N.T. 7/27/72 at 392–93.

supporting petitioner's belief that his counsel on his first post-conviction petition was ineffective.[17]

The Magistrate Judge concluded that this claim could not be the basis of a federal habeas claim. Specifically, the Magistrate Judge found that a claim that the state courts did not properly address his collateral PCRA claims does not involve the Constitution, laws or treaties of the United States and that, given the civil nature of post-conviction proceedings and the fact that states have no obligation to provide collateral relief, petitioner's protections are more limited than those found in criminal proceedings. *See* Report & Recommendation at 8 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).

As with his articulation of his original claim, petitioner's objections to the Magistrate Judge's Report and Recommendation on this claim are likewise not easily understood. Contending that *Finley* is inapplicable to his case, petitioner states, "The questions raised in the Petitioner's PCRA motion on the other hand presented issues raised in context of Fifth, Sixth and Fourteenth Amendment violations during trial and not postconviction relief proceeding where there were allegations of a failure by the state to supply a lawyer or transcripts." *See* Petitioner's Objections at 8. Petitioner then argues that although post-conviction relief is not constitutionally required, if it is provided, it must meet the minimum standards of due process and equal protection. *Id.*

■ This court agrees with the Magistrate Judge. "Claims attacking a state court's application of post-conviction procedures do not state a basis for a federal claim under 28 U.S.C. § 2254." *Gattis v.*

*Snyder*, 46 F.Supp.2d 344, 384 (D.Del. 1999); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993) (finding that claim challenging state post-conviction proceedings "would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); *Duff–Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir.1992) (holding that "infirmities in state habeas proceedings do not constitute grounds for federal habeas relief").

Assuming instead that petitioner is not attacking the post-conviction proceeding itself but rather is advancing claims that his post-conviction counsel was ineffective, such claims would also be denied because "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Coleman*, 501 U.S. at 725, 111 S.Ct. 2546 ("Because there is no constitutional right to an attorney in state postconviction proceedings, *see, e.g., Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings") (citing *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)); *David v. Price*, No. CIV.A 97–7643, 1998 WL 404546, at *2 (E.D.Pa. July 15, 1998) ("finding that petitioner's claim of ineffective of PCRA counsel does not implicate an independent constitutional right because there is constitutional right to counsel in state post-conviction proceedings" and "[c]onsequently, there is no Sixth Amendment right to effective assistance of counsel in state post-conviction proceedings"). Thus, petitioner's objection will be overruled.[18]

17. Specifically, petitioner claims that his post-conviction counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to investigate, raise, seek a charge on the alleged withdrawal defense. Petitioner also that his post conviction counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the court's charge on accomplice liability. *See* Petition at Exhibit A, Rider at 3G.

18. Moreover, a review of petitioner's counseled PCHA petition shows that counsel did, in fact, raise the issue of trial counsel's ineffectiveness with regard to the alleged with-

## V. CONCLUSION

After considering petitioner's objections to the Report and Recommendation and after reviewing those claims not discussed in the Report and Recommendation, this court overrules petitioner's objections. In so doing, the court concludes that petitioner has failed to show: (1) cause and prejudice or a fundamental miscarriage of justice with respect to those claims that are procedurally defaulted and that the Magistrate Judge did not review; (2) that the state courts' resolution of petitioner's ineffectiveness of counsel-related claims is either contrary to or an unreasonable application of federal law; or (3) that his claim relating to his PCRA hearing is cognizable in a federal habeas petition. Accordingly, the court will adopt and approve Magistrate Judge Rueter's Report and Recommendation as supplemented by this memorandum and deny the petition.

An appropriate order follows.

### ORDER

**AND NOW,** this **13th** day of **April, 2000,** upon consideration of the petition for writ of habeas corpus (doc. no. 1), respondents' response thereto (doc. no. 10), the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter (doc. no. 11), petitioner's objections, (doc. no. 12), respondents' response to petitioner's objections (doc. no. 13), and petitioner's rebuttal (doc. no. 14), it is hereby **ORDERED** that:

1. Petitioner's objections are **OVERRULED**;

2. The Report and Recommendation is **APPROVED AS SUPPLEMENTED** by the accompanying memorandum and the petition is **DENIED AND DISMISSED**;

3. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2); and

4. The Clerk shall mark this case **CLOSED**.

**AND IT IS SO ORDERED.**

drawal defense. *See* Response to Petition, Ex. C, ¶ 6(1).